IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A.P. MOLLER - MAERSK A/S, TRADING | § | |
| AS MAERSK LINE, | § | |
|    Plaintiff | § | |
| | § | |
| VS. | § | C.A. NO. |
| | § | Admiralty - Rule 9(h) |
| SAFEWATER LINES (I) PVT, LTD., | § | |
| SAMRAT CONTAINER LINES, INC. and | § | |
| ATNI, INC. | § | |
|    Defendants | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

  Plaintiff A.P. Møller - Maersk A/S, trading as Maersk Line ("Plaintiff" or "Maersk") files its Original Complaint against Defendants Safewater Lines (I) Pvt. Ltd. ("Safewater"), SAMRAT Container Lines, Inc. ("SAMRAT") and ATNI, Inc. ("ATNI"), and respectfully would show as follows:

## I.

## JURISDICTION

  1.  This action arises from the carriage of cargoes by sea from Pipavav, India to Houston, Texas pursuant to maritime contracts. Accordingly, the Court has original jurisdiction of these admiralty and maritime claims under 28 U.S.C. § 1333(1). Maersk designates this as an admiralty claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. Alternatively, this Court has original alienage jurisdiction over the claims against defendant ATNI under 28 U.S.C. § 1332(a)(2), because this is a suit between a foreign plaintiff and a United States citizen and the amount in

controversy exceeds $75,000.00, and supplemental jurisdiction over the claims against Safewater, and SAMRAT pursuant to 28 U.S.C. § 1367(a) because said claims form part of the same case or controversy.

## II.

### PARTIES AND SERVICE OF PROCESS

2.     Plaintiff is a Danish corporation, with its principal place of business at Esplanaden 50, 1098 Copenhagen K, Denmark, that specializes in the transportation of containerized ocean cargo.  Plaintiff brings this action on its own behalf and as agent and trustee on behalf of and for the interest of all parties who may be or become interested, as their respective interests may appear, and Plaintiff is entitled to maintain this action.

3.     Defendant Safewater Lines (I) Pvt. Ltd. is a foreign business entity with its principal place of business at 401-A/402, FILIX,4th Floor, L.B.S. Marg., Bhandup (West), Mumbai - 400 078, India.  Safewater is not authorized to do business within the State of Texas, but at all times material did business in Texas as a non-vessel operating common carrier ("NVOCC"), freight forwarder, and/or logistics provider, entering into service contracts and/or other contracts of carriage which were performable in whole or in part in Texas and/or in the United States as a whole, each of which constitutes doing business in Texas under Section 17.042 of the Texas Civil Practice & Remedies Code.  Safewater is a non-resident of the United States and, pursuant to 28 U.S.C. §1391, may be sued in any judicial district.  Safewater has no office, officers, directors, or registered agents within the District.  Safewater may be served at its principal place of business, in accordance with the Convention on Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters ("Hague Convention"), by forwarding duplicate originals of process with this Original

Complaint, in English, to the Ministry of Law and Justice, Department of Legal Affairs, Room No. 439A, 4th Floor, A-Wing, Shastri Bhawan, New Delhi-110 001, India.

4.      Defendant SAMRAT Container Lines, Inc. is a New Jersey corporation with its principal place of business at 10 Corporate Place South, Piscataway, New Jersey 08854. SAMRAT is not authorized to do business within the State of Texas but, at all times material, did business in Texas as an NVOCC, freight forwarder, and/or logistics provider, entering into service contracts and/or other contracts of carriage which were performable in whole or in part in Texas and/or in the United States as a whole, each of which constitutes doing business in Texas under Section 17.042 of the Texas Civil Practice & Remedies Code. SAMRAT has no office, officers, directors, or registered agents within the District. It may be served at through its registered agent for service of process, Satish V. Anchan, at 10 Corporate Place South, Piscataway, New Jersey 08854.

5.      Defendant ATNI, Inc. is a corporation organized and existing under the laws of the State of Texas, with its principal place of business at 4610 N. Garfield, Suite A-3, Midland, Texas 79705. ATNI may be served with process via service on its registered agent, Mr. Donald Hoffman, at the above referenced address.

## III.

## FACTS

6.      This action arises from the ocean carriage from Pipavav, India to Houston, Texas of sealed shipping containers loaded by someone other than Plaintiff with improperly packaged, overfilled and incorrectly stowed drums of hydrochloric acid ("HCL acid"). As a result of the overfilling, improper packaging and incorrect stowage, it was discovered after the containers arrived in Houston that HCL acid was leaking from the drums in the shipping containers necessitating a

costly emergency clean-up response. Safewater, SAMRAT, and ATNI shipped, refused to take delivery of and abandoned the cargo after its arrival at the Port of Houston, resulting in substantial costs being incurred by Maersk. To date, in spite of due demand, each and all of the Defendants have refused to (i) take delivery of the cargo, and (ii) pay for the cleanup costs, freight, demurrage, and other costs associated with the incident, which they are obligated to pay under the terms of the governing contracts of carriage, and as a result of each entity's breach of contract and negligent acts and/or omissions.

7.      Prior to shipment of the subject cargo, Safewater and Maersk entered into Service Contract No. 516551, which provided preferred freight rates for the carriage of marine cargo to Safewater and its affiliates ("the Service Contract"). The Service Contract reflected that carriage of goods and other services provided by Maersk pursuant to the Service Contract are subject to the terms and conditions of the Maersk bill(s) of lading governing the carriage of the cargo as well as the applicable tariff(s).

8.      Three M/S Global Multichem ("Mulitchem") invoices for the sale of HCL are at issue in this case. They are invoices 102 dated January 12, 2012, 105 dated January 27, 2012, and 106 dated February 9, 2012. Upon information and belief, the manufacturer of the HCL was Nirma Limited, the exporter was Mulitchem, and the ultimate receiver was ATNI. All invoices indicate the HCL will be carried by vessel from India to Houston, and ultimately be delivered to ATNI in Midland, Texas.

9.      Multichem, as an agent for Defendants, or an agent acting on Multichem's behalf, stowed the HCL in drums and then those drums containing HCL were stowed in Plaintiff owned Container Nos. MSKU368505-9, POCU064333-3 and PONU754670-3 ("the containers"). The

-4-

containers then were sealed for ocean carriage from India to Houston, Texas. Plaintiff Maersk did not load the HCL into the shipping drums, or into the containers.

10.     Subsequently, Maersk was contacted by Safewater who booked the containers for ocean carriage to Houston. The transactions were booked under the Service Contract and assigned Booking Nos. 863338433, 863444274 and 863494073. Safewater issued bills of lading for the HCL (at the very least, bill of lading SWLDEL0133f2 was issued by Safewater for the HCL sold under invoice 102) that state "SHIPPER LOAD STOW COUNT & CUSTOMS SEAL."

11.     Prior to loading, the referenced containers were tendered to Maersk at Pipavav, India for shipment to Houston, Texas. Maersk accepted the shipper stuffed containers and issued Bill of Lading Nos. MAEU863338433, MAEU863444274 and MAEU863494073 ("Bills of Lading"), naming Safewater as the shipper and SAMRAT as the consignee. The Bills of Lading were issued expressly subject to the Maersk Terms & Conditions of Carriage ("Maersk Terms & Conditions"). All Defendants are a "Merchant" under the bill of lading terms and conditions.

12.     On or about February 28, 2012, containers MSKU368505-9 and POCU064333-3 were loaded onboard the M/V MAERSK KAMPALA (Voyage 1204) in Papavav, India for carriage to Houston. On or about March 7, 2012, container PONU754670-3 was loaded onboard the M/V HANJIN DALLAS (Voyage 1204) in Papavav, India for carriage to Houston. All referenced containers were transshipped to Houston on the M/V MAERSK IDAHO.

13.     On or about April 13, 2012, after arrival at the APM Terminal at the Port of Houston, Texas, the containers were found to be leaking HCL. Upon opening the sealed containers, it was discovered the drums had leaked HCL because they: (i) were overfilled; (ii) were nonconforming,

unapproved and consequently inadequate for carriage of HCL acid; and/or (iii) were improperly stowed in the containers.

14.     Upon discovery of the HCL leakage, immediate efforts were undertaken to stop the leakage and remove the previously spilled HCL. A local hazardous materials specialist was hired to manage the emergency spill clean-up response, including stopping the leakage and removing the spilled HCL. The spilled HCL was cleaned up and the drums of HCL acid were re-packed. Some of the drums were trans-loaded from container No. MSKU368505-9 to No. CAXU968674-4, and from No. POCU064333-3 to No. MSKU866533-2, all at significant expense to Maersk.

15.     Defendants abandoned the cargo at the APM Terminal and refused to pay for either (i) the cleanup costs incurred as a result of the emergency spill response, or (ii) the freight, demurrage, and other costs unavoidably incurred by Maersk as a result of this incident.

16.     Ultimately, Maersk sold the HCL acid to the highest bidder at a salvage sale. Maersk received $550.00 from the sale.

**IV.**

**FIRST CAUSE OF ACTION AGAINST**
**SAFEWATER, SAMRAT, MULTICHEM AND NIRMA - NEGLIGENCE**

17.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-15 as if fully set forth herein.

18.     At all material times, Safewater, SAMRAT and ATNI were the freight forwarders, logistics providers, NVOCCs, manufacturers, receiver and/or shippers of the subject cargo, and so were responsible for the proper packaging and marking of the subject cargo, and/or for the HCL owned by it after the arrival of the containers in Houston.

19.     These Defendants individually and/or jointly failed to comply with multiple regulations found in Chapter 49 of the Code of Federal Regulations controlling the packaging of hazardous materials to be shipped by an ocean carrier to the United States, including but not limited to the following:

a.      Offering a hazardous material for transportation in a packaging that leaks during conditions normally incident to carriage. 49 C.F.R 173.24(b);

b.      Overfilling a package so that the effectiveness of the package is substantially reduced. 49 C.F.R 173.24(b)(2);

c.      Overfilling a package so that it leaks, causing hazardous material residue to adhere to the outside of the package during transport.    49 C.F.R. 173.24(b)(4);

d.      Offering a hazardous material for transportation in a packaging whose closures leak during conditions normally incident to carriage.  49 C.F.R. 173.24(f);

e.      Overfilling a package so that insufficient ullage is left, such that leakage and permanent distortion of the packaging occur as a result of an expansion of the liquid caused by temperatures normally incident to and likely to be encountered during transportation.  49 C.F.R. 173.24(h);

f.      Offering a hazardous material for transportation in an unauthorized non-UN standard packaging.  49 C.F.R. 173.22(a)(2); and

g.      Failure to properly placard a freight container containing hazardous materials in accordance with 49 C.F.R. 172.504.

20.     These Defendants' negligent failure to comply with regulations for the shipment of hazardous materials triggers liability without fault and liability based on negligence and/or negligence *per se* for the total amount of the damages incurred by Maersk as a result of said failure. Further, ATNI is liable to Maersk because it failed to take possession of its HCL after the cargo

arrived in Houston, and/or to organize and pay for the clean up efforts of its leaking cargo. To date, the amount of damages incurred by Maersk is $199,775.03, and continues to accrue.

## SECOND CAUSE OF ACTION - BREACH OF CONTRACT

21.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-22 as if fully set forth herein.

22.     At all material times, Safewater was the freight forwarder, logistics provider, and/or NVOCC of the subject cargo, the carriage of which Safewater booked with Maersk pursuant to the Service Contract and for which Maersk issued the Bills of Lading. Under the governing contract of carriage and other applicable contracts, Safewater was subject to and bound by the Maersk Terms & Conditions.

23.     At all times material, upon information and belief, SAMRAT was the freight forwarder, logistics provider, and/or NVOCC of the subject cargo, the carriage of which was booked with Maersk pursuant to the Safewater/Maersk Service Contract and for which Maersk issued the Bills of Lading. Additionally, SAMRAT was the consignee of the cargo under the Bills of Lading, so under the governing contract of carriage and other applicable contracts, SAMRAT was subject to and bound by the Maersk Terms & Conditions. ATNI was the cargo receiver and thus a Merchant under the bill of lading terms and conditions.

24.     As more fully detailed below, Defendants breached their contract of carriage with Maersk by tendering cargo to Maersk which was insufficiently packaged in a manner inadequate to withstand the routine rigors and risks of ocean carriage, failing to adhere to international standards for the packaging and shipment of hazardous materials, and failing to pay the agreed freight and other expenses associated with the shipment and failure to accept delivery of their goods.

25.     Under the governing contract(s) of carriage or other applicable contract, and the course of dealing of the parties, Defendants were responsible for ensuring proper packaging of the subject cargo in a manner adequate to withstand the routine rigors and risks of ocean carriage. Defendants, or those acting by, through, or on their behalf, failed to properly package the subject cargo for shipment in breach of the governing contract(s) of carriage.  As such, Defendants are each jointly and severally liable for the damages, costs, and expenses arising from of the insufficient packaging of the subject cargo, including but not limited to costs of emergency spill cleanup response and demurrage, and must indemnify Maersk for same.  *See* Maersk Terms & Conditions, Cl. 11.2, available at www.maerskline.com.

26.     Further, Multichem, on behalf of itself and each of the other Defendants, executed a statutory declaration contained in the Multimodal Dangerous Goods Form for the subject cargo certifying that the drums of HCL were properly packaged, marked, labeled/placarded, and otherwise fit for transport per the applicable international and national government regulations. Defendants warranted under the contract of carriage that the cargo was packed both to withstand the usual risks of carriage and in compliance with all applicable laws and regulations. The statutory declaration contained in the Multimodal Dangerous Goods Form was false, and Defendants breached their warranty under the contract of carriage.   As such, Defendants are each jointly and severally liable for the damages, costs, and expenses arising from the insufficient packaging of the subject cargo, including but not limited to costs of emergency spill cleanup response and demurrage, and must indemnify Maersk for same.  *See* Maersk Terms & Conditions, Cls. 21.2 and 21.3.

## VI.

## __DAMAGES__

27.     As a result of the Defendants' negligence and breaches of the governing contract(s) of carriage, Maersk proximately has sustained damages in the amount of not less than $199,775.03, demand for which has been made upon each Defendant and which remains unpaid and accruing as of the filing of this suit.  The costs and expenses due and owing to Maersk include but are not limited to the following:

| | | |
|---|---|---|
| a. | Maersk Demmurage Invoice No. 5246665792 | $52,600.00 |
| b. | Maersk Demmurage Invoice No. 524680289 | $50,975.00 |
| c. | Maersk Demmurage Invoice No. 5246680295 | $50,975.00 |
| d. | M&M Protection, LLC Invoice MAE041312B | $3,005.98 |
| e. | M&M Protection, LLC Invoice MAE0413121A | $1,623.75 |
| f. | M&M Protection, LLC Invoice MAE041312A | $1,623.75 |
| g. | M&M Protection, LLC Invoice MAE0413121-A | $15,317.44 |
| h. | M&M Protection, LLC Invoice MAE041312 | $13,690.06 |
| I. | Universal Maritime Service Corp. Invoice HOU12XM05005 | $4,514.05 |
| j. | Attorneys' Fees Incurred to Date | $6,000.00 |
| j. | Less Salvage Sale of HCL Acid | -$550.00 |

## VII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff A.P. Møller - Maersk A/S, trading as Maersk Line respectfully requests that:

A.     Plaintiff have judgment against Defendants, jointly and severally, in an amount to be

shown at trial of this matter but currently approximating at least $199,775.03, plus

pre-judgment interest, post-judgment interest, costs, and attorneys' fees;

B.     Defendants Safewater Lines (I) Pvt. Ltd., SAMRAT Container Lines, Inc. and ATNI,

Inc. be cited to appear and answer in this matter; and

C.     Plaintiff have such other and further relief as justice and equity allow.

Respectfully submitted,


By:    /s/ Richard L. Gorman
          Richard L. Gorman
          State Bar No. 00784155
          Fed. I.D. 15685
          12335 Kingsride Lane #354
          Houston, Texas 77024
          Telephone: (832) 725-4026
          Email: rg@richardgormanlaw.com
          Attorney-in-Charge for Plaintiff A.P.
          Møller - Maersk A/S, trading as Maersk Line

OF COUNSEL:

RICHARD GORMAN LAW

01795/Complaint.06-12-13