IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A.P. MOLLER-MAERSK A/S, TRADING AS MAERSK LINE, | § § § | |
| Plaintiff, | § | |
| VS. | § § | Civ. A. H-13-1726 Admiralty - Rule 9(h) |
| SAFEWATER LINES (1) PVT, LTD., SAMRAT CONTAINER LINES, INC. and ATNI, INC., | § § § § | |
| Defendants. | § | |

## OPINION AND ORDER

The above referenced suit, over which the Court has original admiralty jurisdiction pursuant to maritime contracts (28 U.S.C. § 1333(1)) and/or diversity jurisdiction as a suit between a foreign plaintiff and a United States citizen with an amount in controversy exceeding $75,000.00 (28 U.S.C. § 1332(a)(2)),[1] asserts causes of action for negligence, breach of the governing contract(s) of

---

[1] Plaintiff A.P. Moller-Maersk A/S, Trading as Maersk Line ("Maersk"), is a Danish corporation with its principal place of business in Copenhagen. Regarding the Defendants, Safewater Lines (I) Pvt, Ltd.,a non-vessel operating as common carrier ("NVOCC"), freight forwarder and/or logistics provider, is a foreign business entity with its principal place of business in Mumbai, India that may be sued in any judicial district pursuant to 28 U.S.C. § 1391. Safewater Lines India Pvt Ltd. is also a foreign business entity with its principal place of business in Mumbai, an NVOCC, freight forwarder, and/or logistics provider. Collectively they are referred to by their names or the "Safewater Defendants." Samrat is a New Jersey corporation with its principal place of business in Piscataway, New Jersey and a NVOCC, freight forwarder, and/or logistics provider, while ANTI, Inc. is a Texas corporation with its principal place of business in Midland, Texas.

carriage, and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), for Maersk's voluntary efforts to clean up properties contaminated by a hazardous substance (hydrochloric acid) and to seek contribution from other liable parties,[2] with damages and/or contribution thus far amounting to at least $243,775.03. The Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over Samrat Container Lines, Inc.'s ("Samrat's") crossclaim for indemnification against Safewater (I) Pvt Ltd., and Safewater Lines India Pvt, Ltd., because the crossclaim forms part of the same case or controversy.

Maersk seeks to have Defendants take delivery of the cargo of drums filled with hydrochloric acid that Defendants had shipped to Houston, but then abandoned upon discovering the drums were leaking after their arrival at the Port of Houston. Maersk also demands that they, jointly and severally under the terms of the governing contracts of carriage, repay Maersk the resulting expensive

---

[2] The negligence claim is against Safewater Lines (I) Pvt., Ltd. and Safewater Lines (India) Pvt., Samrat, and ATNI for failure to comply with regulations in Chapter 49 of Federal Regulations (listed #43 at pp. 7-8) regarding packaging of hazardous materials to be shipped by ocean carrier to the United States and failure to take possession of the cargo in Houston or to pay for cleanup costs. The breach of contract(s) cause of action against all four Defendants rests on the same facts. In the third cause of action Maersk seeks contribution of at least $243.775.03 from Safewater Lines (I) Pvt., Ltd. and Safewater Lines (India) Pvt., Samrat, and ATNI, as the responsible parties, under CERCLA, 42 U.S.C. §§ 9601, et seq. for the environmental cleanup.

emergency clean up costs, freight demurrage, and other expenses arising from the spill of the hydrochloric acid from the supposedly sealed shipping containers after the acid was allegedly improperly packed in overfilled drums and incorrectly stowed aboard the vessel by M/S Global Multichem and carried across the ocean from Pipavav, India to Houston, Texas.

Pending before the Court *inter alia* are Defendants Safewater Lines (I) Pvt., Ltd. and Safewater Lines (India) Pvt.'s motion to vacate order on motion for default judgment (#79) and Defendants Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT's motion for clarification (#85) regarding the Court's Opinion and Order of January 31, 2017 (#84).

Defendant ATNI, Inc. has settled with Maersk and been dismissed with prejudice from the suit on February 20, 2015 (#34).

### Standard of Review

Federal Rule of Civil Procedure 55(c) states, "The court may set aside an entry of default for good cause and it may set aside a final default judgment under Rule 60(b)."[3] In evaluating whether

---

[3] The court in *Safdar v. AFW, Inc.*, 279 F.R.D. 426, 430–31 (S.D. Tex. 2012), opined that the language of Federal Rule of Civil Procedure 55(c),

> which was effective December 2007, makes apparent that the entries of default and default judgments are reviewed under two separate standards. *Cf. In re Marinez*, 589 F.3d 772, 777 (5th Cir. 2009)(addressing a bankruptcy claim and quoting *In re OCA, Inc,* 551 F.3d 359, 370 n.29 (5th Cir. 2008), which states that the revised wording of Rule 55(c) "may confirm that the

good cause exists, the Fifth Circuit has consistently weighed three factors: "whether the defendant willfully defaulted, whether a meritorious defense is presented, and whether setting aside the default judgment would prejudice the defendant." *Scott v. Carpanzano*, 556 Fed. Appx. 288, 293 (5th Cir. Jan. 24, 2014), *citing Jenkins & Gilchrist v. Groia & Co.*, 542 F.2d 114, 119 (5th Cir. 2008). "A willful default is an 'intentional failure' to respond to litigation." *In re OCA, Inc.,* 551 F.3d 359, 370 n.32 (5th Cir. 2008), *citing Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000), *quoting In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). While the Court recognizes that setting aside of the entry of default will delay a plaintiff's collection of damages, "delay by itself does not constitute prejudice." *McConaghi v. Islamic Republic Broadcasting*, EP-13-CV-190-FM, 2014 WL 12580038, at *6 (W.D. Tex. Sept. 19, 2014). "[T]here is also no prejudice where the setting aside of the default has done no harm to plaintiff except to require it to prove its case." *Walker v. FFVA Mutual Ins. Co.*, Civ. A. No. 1:12CV301-HSO-RHW, 2013 WL 6493104, at *2 (S.D. Miss. Nov. 6, 2013), *report and recommendation adopted*, 2013

---

'good-cause' standard applicable to entries of default does not apply to default-judgment cases."). Applying the current wording to a case in which both an entry of default and a default judgment have been entered, the default judgment may be reversed if the complaining party satisfies Rule 60(b) and, if that party also demonstrates good cause for the default, the entry of default preceding judgment may be vacated as well.

WL 6493087 (S.D. Miss. Dec. 10, 2013). The Fifth Circuit "[i]n assessing a motion to vacate a default judgment, . . . has interpreted Rule 60(b)(1) as incorporating the Rule 55 'good cause' standard applicable to entries of default." *In re OCA, Inc.*, 551 F.3d 359, 369 (5th Cir. 2008).

The Fifth Circuit has identified "factors [that] shape the framework of the court's consideration of a 60(b) motion":

> (1) That final judgments should not lightly be disturbed;
> (2) that the Rule 60(b) motion is not to be used as a
> substitute for appeal; (3) that the rule should be
> liberally construed in order to do substantial justice;
> (4) whether the motion was made within a reasonable time;
> (5) whether--if the judgment was a default or a dismissal
> in which there was no consideration of the merits--the
> interest in deciding cases on the merits outweighs, in
> the particular case, the interest in the finality of
> judgment and there is merit in the movant's claim or
> defense; (6) whether there are any intervening equities
> that would make it inequitable to grant relief; and (7)
> any other factors relevant to the justice of the judgment
> under attack.

*In re Marinez*, 589 F.3d at 777, *citing Edward H. Bohlin, Inc. v. The Banning Co.*, 6 F.3d 350, 355-57 (5th Cir. 1993).

Federal Rule of Civil Procedure 60(b) provides,

> On motion and just terms, the court may relieve a party
> or its legal representative from a final judgment, order,
> or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable
> neglect;
>
> (2) newly discovered evidence that, with reasonable
> diligence, could not have been discovered in time to move
> for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or
> extrinsic), misrepresentation, or misconduct by an

opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Rule 60(d) states, "This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or (3) set aside a judgment for fraud on the court."

"A defaulting party is deemed to have admitted all well-pleaded allegations of the complaint." *Administrative Committee of the American Basketball Assoc. v. Jones*, Civ. No. SA-16-CA-31-DAE, 2016 WL 8905038, at *4 (W.D. Tex. Sept. 7, 2016). "It is universally understood that a default operates as a deemed admission of liability." *Dierschke*, 975 F. 2d 185. *See also J&J Sports Prods. v. El Pescador Mexican Seafood, Inc.*, Ni. 4:10cv21-, 2010 WL 5027193, at *2 (E.D. Tex. Oct. 27, 2010) ("Defendants are deemed to have admitted by default all the factual allegations in Plaintiff's Complaint. Fed. R. Civ. P. 8(b)(6)."), *report and recommendation adopted,* 2010 WL 5027182 (E.D. Tex. Dec. 3, 2010); *EMI April Music, Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 623 (N.D. Tex. 2008)("By virtue of their default, Defendants have admitted that the factual allegations in the Complaint are true.").

A district court may set aside an entry of default or default judgment[4] for "good cause" shown. Fed. R. Civ. P. 55(c); *Lacy v. Sitel Corp.*, 227 F.3d 290, 291 (5th Cir. 2000). "Good cause" is interpreted liberally, and the court considers three factors *inter alia* to identify circumstances that warrant a finding of good cause to set aside a default: "(1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented." *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003). Other factors may include whether the public interest was implicated, whether the defendant suffered a significant financial loss, and whether the defendant acted expeditiously to set aside the default. *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). "Courts may also consider . . . whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default." *Jenkins & Gilchrist v. Groia & Co.*, 542 F.3d 114, 120 (5th Cir. 2008). *See also Levitt-Stein v. Citigroup, Inc.*, 284 Fed. Appx. 114, 119 (5th Cir. Feb. 19, 2008)("When ruling on a motion to set aside default judgment, the district court should consider: '(1)

---

[4] "The entry of default is merely a notation in the Clerk's record that a party is in default and is not itself a judgment. After default has been entered the applicant may move for judgment based on the default." *Administrative Committee of the American Basketball Assoc. v. Jones*, Civ. No. SA-16-CA-31-DAE, 2016 WL 8905038, at *2 (W.D. Tex. Sept. 7, 2016).

the extent of the prejudice to the plaintiff; (2) the merits of the defendant's asserted defense; and (3) the culpability of [the] defendant's conduct.'"), *quoting Rogers v. Hertford Life & Accident Uns. Co.*, 167 F.3d 933, 938-39 (5th Cir. 1999). The Fifth Circuit has opined that these factors are not talismanic, and the court may consider other factors in its discretion. *Rogers*, 167 F.3d at 939.

"[T]wo of the factors can be determinative: a district court may refuse to set aside a default judgment if it finds either the default was willful or that the defendant failed to present a meritorious defense." *Carpanzano*, 556 Fed. Appx. at 293. "A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" *Lacy*, 227 F.3d at 293; and *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). The plaintiff does not suffer prejudice when the only harm done to plaintiff in setting aside a default is to require him to prove his case. *Lacy*, 227 F.3d at 293.

The Fifth Circuit reviews the denial of such relief only for abuse of discretion, and it reviews any factual determinations for clear error. *Lacy*, 227 F.3d at 291. Because of the gravity of a default judgment and because of the standard of review of "abuse of discretion" under which "even a slight abuse of discretion may justify reversal," a court has the discretion to deny a request to set aside a default judgment under Rule 60(b)(1), "'a decision

necessarily . . . informed by equitable principles.'" *Id.* Because default judgments are "generally disfavored in the law" and "trial on the merits is to be favored over such a truncated proceeding . . . [u]nless it appears that no injustice results from the default, relief should be granted." *Scott v. Carpanzano*, 556 Fed. Appx. 288, 294 (5th Cir. Jan. 24, 2014), *citing In re OCA, Inc.,* 551 F.3d 359, 370-71 (5th Cir. 2008). Nevertheless, "[a]lthough default judgments are disfavored as a matter of policy, that policy is counterbalanced by considerations of social goals, justice, and expediency, a weighing process that lies largely within the domain of the trial judge's discretion." *Rogers v. Hartford Life & Accident Ins Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

**Defendants Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT's Motion for Clarification (#85)**

The motion for clarification (#85) is in the form of a letter to the Court. The Court grants the motion and explains that the confusion it references arises from contemporaneous events, about which at various times the parties and the Court were unaware.

On January 25, 2016 Defendant Samrat filed a crossclaim for indemnification (#47) against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.,[5] in which Samrat denies all involvement in, and therefore liability for, the causes of action

---

[5] Samrat treats the two Safewater Defendants as one entity, which it calls "Safewater Lines (I) PVT Ltd."

which, in the main case, Maersk asserts would make Samrat jointly and severally liable with Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. to Maersk for damages, costs, and expenses if Samrat prevailed.      That same day what appeared to be a proposed order of partial dismissal with prejudice (#48) was filed without a motion or notice and without any citation to law or rule nor any indication whether it was opposed, stating that Plaintiff Maersk's claims against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. had been settled and were dismissed with prejudice, while Maersk's claims against Samrat remained pending.  Samrat filed opposition (#50) to the proposed, unattached order based on the absence of a Federal Rule of Civil Procedure 41 dismissal motion and objected to any dismissal of the two because Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, Ltd. had not responded to Maersk's complaint, even though the parties' Second Joint Discovery/Case Management Plan (#40) indicated that Samrat intended to crossclaim against Safewater (I) PVT, Ltd. and Safewater Lines (India) PVT, Ltd.  The Court struck the unattached proposed order, the purpose of which, without a motion or notice, signed by counsel, explaining its context, was unclear (#53).    Furthermore, even though a voluntary dismissal under Rule 41(a)(1)(A)(I) is self-effectuating, in this district the court usually issues an order granting a motion for voluntary dismissal.  On February 8, 2016, Maersk filed a Notice of

Voluntary Dismissal With Prejudice of Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, Ltd. (#54) under Federal Rule of Civil Procedure 41(a)(1)(A)(i) and stated again that Plaintiff had settled with these two Defendants, but was pursuing its claims against Samrat. Through an error in the Clerk's office, because the document was not styled as a motion, the Court was not alerted to its existence and did not, but should have either noted the dismissal of the parties on the docket sheet or have entered an order dismissing these Defendants as of that date.

Meanwhile, thirteen days before Maersk filed its Notice of Voluntary Dismissal with Prejudice of Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, Ltd. (#54), Samrat filed its crossclaim (#49) against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, Ltd.,[6] but the two Safewater

---

[6] In *Rogers v. Hartford Life and Acc. Ins. Co.,* 165 F.3d 933, 937 (5th Cir. 1999), the Fifth Circuit opined that Rule 4(m) requires

> dismissal of a case in which the plaintiff does not accomplish service within 120 days after filing the complaint, unless the plaintiff can show good cause for not doing so. Until the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment. *See Broadcast Music, Inc. v. M.T.S. Enter., Inc.,* 811 F.2d 278, 282 (5th Cir. 1987)("No person need defend an action nor suffer judgment against him unless he has been served with process and properly brought before the court."). Once the plaintiff effects service of process, however, Rule 12 is triggered and then the defendant must answer the complaint or risk default.

Defendants, although served, never filed a responsive pleading to Samrat's crossclaim. (Nor had they ever answered Maersk's Original (#1), First Amended (#20), or Second Amended Complaints (#43).) Samrat therefore filed two motions for entry of default against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd., #57 and #72, based on the claims in the Second Amended Complaint. The Court granted entry of default on December 14, 2016. #70. Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. objected that when the Court then entered final default judgment against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. on December 21, 2016 (#75), it cut off Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.'s time to respond.[7]

The Court's Opinion and Order (#84) addressed both motions for entry of default. After Samrat's first motion for entry of default (#57) against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT (#57) on Samrat's cross-claim was filed, the question arose whether the Safewater entities, as India-based companies, had

---

Entry of default may be granted where a party does not answer a crossclaim. 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Rules of Civil Procedure* § 2682 at 16 (West 1998).

[7] There is a clerical error in the entry of #70 in the docket sheet as a default judgment, when it actually was only an entry of default. Only after Samrat filed a motion for entry of default judgment (#72) was final default judgment was entered in #75 on December 21, 2016.

been properly served. After obtaining and filing evidence that proper service had been effected under the Hague Convention (#68), on December 8, 2016 Samrat filed its renewed request for entry of default (#69) against the two Safewater entities. On December 14, 2016 default was entered against the two Safewater Defendants (#70). Samrat then moved for default judgment against the two Safewater entities (#72), a motion which the Court granted on December 21, 2016 (#75).

Subsequently on January 5, 2017 Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. moved to vacate the default judgment (#79) entered against them. They explained that they did not file an answer to the crossclaim because they assumed that if they did so, it "would constitute formal entry into a matter that it rightfully believed was resolved by Maersk's settlement with them and should be dismissed. It was not anticipated that the Complaint would not be dismissed following settlement, and that Samrat's Cross-Claim would endure." #79 at pp. 2-3. In other words, once the Plaintiff dismissed claims against Samrat, Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. expected that Samrat's crossclaim would be moot because Maersk's claims for damages against it would be mooted by its settlement with Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, Ltd. *Id.* at 3. Furthermore, "filing an answer was something that the Defendant believed would sully its chances of having the matter

resolved and defeat Plaintiff's efforts to do so as to [Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.]." *Id.*

In addition, Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. claim they have a meritorious defense to Samrat's crossclaim. *See* generally the Declaration of Anil Kumar Malik, Managing Director of Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd., #79-1. Contrary to Samrat's insistence that Samrat could not be sued for breach of contract because it was not a party to any contract with Maersk, the Safewater Defendants argue that Samrat was their agent under the terms of the bill of lading: "all U.S.-bound shipments were consigned to it, including hazardous and non-hazardous shipments, so Samrat became a party to a shipping contract as a consignee." The bill of lading (#79-1, Exhibit 1) identified Samrat as the consignee. The Service Contract and the bill of lading list the Safewater Defendants as "Shipper." Under the bill of lading, Maersk sought to hold all parties jointly liable and has a valid claim against Samrat for indemnification. In addition, Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. conclusorily state that when the hydrochloric acid shipment was given to Maersk, Maersk accepted it as in sound condition, and the spillage only occurred later when the drums were in Maersk's custody, yet Samrat erroneously claims that it was not a party to a contract with Maersk. The bill of lading makes clear that Samrat was in privity with and potentially

liable to Maersk in (1) listing Samrat as the consignee and in stating that the Merchant (defined to include consignees) "undertakes no claim or allegations, whether arising in contract, bailment, tort, or otherwise shall be made

> against any servant, agent, or Subcontractor of the Carrier, which imposes or attempts to impose upon any of them or any vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the Carriage of Goods whether or not arising out of negligence on the part of such Person. The Subcontractor, agent or servant shall also be entitled to enforce the foregoing covenant against the Merchant.

#79-1, Ex. 1, ¶ 17. The terms on the reverse side of the bill of lading also provide that should "such claim or allegation . . . nevertheless be made," the Merchant shall "indemnify the Carrier against all consequences thereof." #79-1, Ex, 1, ¶ 18. They further state,

> The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person other than in accordance with these Terms and Conditions which imposes or attempts to impose upon the Carrier by any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

#79-1, Ex. 1, ¶19. Thus Maersk had a valid claim against Samrat for indemnification and Samrat's claim that it was not in privity by a contract with Maersk fails.

Furthermore, argue Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, the fact that they reached their own settlement

with Maersk is independent of any potential liability that Samrat might have to Maersk under the clear terms of the Bill of Lading. Any indemnification that they might owe Maersk is standalone and unaffected by their settlement. Samrat can contend that Maersk achieve full satisfaction on its indemnification claim from Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT,

> Along these lines, that [Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.] reached [their] own settlement with Plaintiff is independent of any potential liability Samrat might have to the Plaintiff under the clear terms of the Bills of Lading. Indeed, any indemnification it might owe the Plaintiff is standalone and unaffected by [Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.'s] settlement. If anything, Samrat can argue that the Plaintiff achieved full satisfaction on its indemnification claim from [Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.], or that any judgment the Plaintiff achieves against Samrat should be considered in light of the settlement it reached with [Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.]. Samrat's cross-claim in effect seeks to make [Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.] pay twice for a matter that it already paid on, while itself paying nothing. [Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.'s] settlement of the matter does not relieve Samrat from liability.

*Id.* at ¶21.

### Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd.'s Motion to Vacate Default Judgment (#79)

Samrat charges that Defendants Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT did not even attempt to offer an excuse about their neglect in failing to answer Samrat's indemnification crossclaim because they believed in good faith that

if they did respond, they "would effectively place [themselves] in an action that [they] rightfully believed was resolved and should have been dismissed."  As noted, they thought that once Maersk's claim against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT was dismissed, Samrat's crossclaim would become moot.

Although claiming in the crossclaim that Samrat was not a party to a contract with Maersk, Samrat admits that it was listed as consignee and therefore was indeed a party to the contractual relationship.  Samrat also insists that it did not authorize Maersk or Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT to designate Samrat as a consignee of the hydrochloric acid.

Setting aside the default judgment would greatly prejudice Samrat, Samrat insists.  Samrat continues to incur attorney's fees in defending against Maersk's claims and Defendants Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT are responsible for the alleged damage, not Samrat, which claims it "played no role in the shipment of HCL, did not act as shipper, freight forwarder, and never agreed to be designated as the consignee."

Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT insist they have a meritorious defense because Samrat was in privity with and potentially liable to Maersk in the indemnity crossclaim that Samrat has raised against the Safewater Defendants. Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT were not involved in the underlying transactions for which Maersk now

seeks damages under a service contract. Maersk signed the Service
Contract with the Safewater Defendants; Samrat was not a party to
it or any contract with Maersk. The Service Contract, however,
provided that the carriage of goods and other services provided by
Maersk were subject to the terms and conditions of the Maersk Bills
of Lading governing the carriage of the cargo and the applicable
tariffs. #43, Second Amended Complaint at ¶8. Samrat was the
consignee (receiver) of the cargo in Houston, after the voyage from
India. Samrat did not load the cargo nor tender the cargo in India
to Maersk, nor contribute to the loss from which Maersk seeks
recovery. While the cargo was still in India, Defendants Safewater
Lines (I) PVT, Ltd. and Safewater Lines (India) PVT contributed the
containers to be loaded and had the direct contractual relationship
with Maersk.[8]

Maersk represents that it settled with Safewater Lines (I)
PVT, Ltd. and Safewater Lines (India) PVT and the remaining
defendants in this suit for $60,000 (#67, p. 26), less than it
demanded in its complaint (#43), and now claims damages in the
amount of $133,775.03 against Samrat alone. Samrat maintains that
based on the contractual relationship between itself and Maersk and
the claims by Samrat which were already entered in a default

---

[8] Safewater Lines (I) PVT, Ltd. and Safewater Lines (India)
PVT argue that Samrat's counsel has no personal knowledge of the
content of these statements and therefore the statements are not
properly before the Court.

judgment against Safewater Lines (I) PVT, Ltd. and Safewater Lines
(India) PVT, Safewater Lines (I) PVT, Ltd. and Safewater Lines
(India) PVT are now liable for any remaining damages that Maersk
seeks. Merely because Maersk settled its case with Safewater Lines
(I) PVT, Ltd. and Safewater Lines (India) PVT for less than it
asked in its complaint does not excuse Safewater Lines (I) PVT,
Ltd. and Safewater Lines (India) PVT from responding to the
crossclaim filed against them by Samrat, nor that Samrat is somehow
responsible for making up the balance of Maersk's alleged losses.
If the Court decides that Maersk is entitled to damages, any
amounts due from Samrat are the responsibility of Safewater Lines
(I) PVT, Ltd. and Safewater Lines (India) PVT to pay, as set out in
the crossclaim (#49). Thus Samrat asks the Court to deny the
motion to vacate default.

Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT
claim they can easily satisfy the requirements for vacatur of the
default judgment under Rule 60(b). Safewater Lines (I) PVT, Ltd.
and Safewater Lines (India) PVT, Ltd. claim that setting the
default judgment against them aside would not prejudice Samrat
because the default judgment (#72) was prematurely entered 6 days
after the motion for default judgment (#72) was made, depriving
Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT of
the additional days to oppose it and to vacate the entry of
default. Thus Samrat could not have reasonably counted on

Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT being out of the case, especially because Maersk had been fighting to get its case against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT dismissed. Moreover there was no lengthy delay involved for the same reasons. They did not file an answer because they legitimately believed that doing so would enter them into a case that they in good faith believed should be dismissed. Finally they have a meritorious defense to the crossclaim.

In addition, default should be vacated where Samrat has no legal right to maintain a contribution right against a settling defendant. The Supreme Court in *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 209-10 (1994), held that the proportionate share rule applies in maritime tort suits against joint tortfeasors and bars suits for contribution from settling defendants. When one of several defendants settles its maritime dispute with the plaintiff, the liability of the remaining, nonsettling defendants should be determined by allocating their proportionate share of responsibility for the plaintiff's injuries. Under this approach, "nonsettling defendants pay no more than their share of the judgment" so no suits for contribution from settling defendants are necessary nor permitted. *Id.* at 209; *in accord, Boca Grande Club, Inc. v. Fla. Power & Light Co.*, 511 U.S. 222, 222 (1994). Thus a settling defendant is entitled to a bar against contribution. *See Ondimar Transportes Maritios, LTDA v. Beatty St. Properties, Inc.*,

2008 WL 45793, at *4 (S.D. Tex. Jan. 2, 2008)(Under the *McDermott* proportionate share approach, "[i]f a plaintiff negotiates a generous settlement, other nonsettling defendants will not have their liability reduced; if the plaintiff negotiates a thin settlement, the nonsettling defendants will not have to assume a disproportionate share of the liability. The *McDermott* court recognized that under this approach, no suits for contribution may be brought by nonsettling tortfeasors against the settling defendants because the nonsettling defendants pay no more than their share of any settlement or judgment. Under *McDermott* and *Boca Grande*, nonsettling tortfeasors have no right to seek contribution against settling parties. Courts have applied this rule to preclude contribution suits by settling tortfeasors against nonsettling tortfeasors as well.

There is no prejudice to granting the motion to vacate because Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT still believe Samrat has no right to maintain its crossclaim against them. Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT. did not answer the crossclaim because they believed doing so would defeat Plaintiff's drawn out attempts to dismiss the action against the  right to maintain its crossclaim against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT., effectively entering the case. Default was only entered very recently, and the motion practice between Samrat and Maersk put Samrat on notice as

to why it had no right to maintain its crossclaim against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT and why Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT. were not answering the crossclaim. Malik's Declaration (#79-1) shows that to maintain its crossclaim against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT. acted in good faith and had a meritorious defense to the crossclaim. They further highlight that they opposed Samrat's motion for entry of default (#58 and 61), even though that motion to set aide was Samrat's very first submission in this litigation, and actively fought Samrat's efforts to enter default against them.

Even if Samrat were permitted to proceed legally, Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT. still have a meritorious defense to the crossclaim. As the named "Consignee" on the Bill of Lading #79, Exhibit 2), Samrat is a "Merchant"[9] as defined in Clause I of the Bill of Lading terms and conditions. As Consignee Samrat is a party to the Bill of Lading, bound by its terms, and jointly and severally liable to Maersk for the expenses Maersk incurred to clean up the acid spill, for demurrage, and for

---

[9] "'Merchant' includes, *inter alia*, the consignee," while "Carrier" refers to Maersk.

attorney's fees (Clauses 3,[10] 11,[11] 15,[12] 16.7[13], 21,[14] and 22[15]).

---

[10] Clause 3 ("Warranty") states, "The Merchant warrant that in agreeing to the Terms and Conditions hereof he is, or has the authority to contract on behalf of, the Person owning or entitled to possession of the Goods and this bill of lading."

[11] Clause 11.2 states in relevant part,

If the container has not been packed by the Carrier: . . . "the Merchant shall indemnify the Carrier against any injury, loss, damage, liability. or expense whatsoever incurred by the Carrier if such loss of or damage to the contents and/or such injury, loss, damage, liability or expense has been caused by any matter beyond his control . . . .

[12] Clause 15 ("Merchant's Responsibility") states in relevant part,

15.1 All of the Persons coming within the definition of Merchant in clause 1, including any principal of such Person, shall be jointly and severally liable to the Carrier for the due fulfillment of all obligations undertaken by the Merchant in this bill of lading.

15.2 The Merchant shall be liable for and shall indemnify the Carrier against all loss, damage, delay, fines, attorney fees and/or expenses arising from the breach of any of the warranties . . . in . . . this bill of lading and from other cause whatsoever in connection with the Goods got which the Carrier is not responsible. . . .

15.4 If Containers supplied by or on behalf of the Carrier are unpacked by or for the Merchant, the Merchant is responsible for returning the empty Containers, with interiors clean, odour free and in the same condition as received, to the point or place designated by the Carrier, within the time prescribed. Should a Container not be returned in the condition required and/or within the time prescribed in the Tariff, the Merchant shall be liable for any detention, loss or expense incurred as a result thereof.

[13] Clause 16.7 provides,

-23-

Those clauses, taken together, make Samrat liable to Maersk for the

---

Despite the acceptance by the Carrier of Instructions
to collect Freight, duties, fees, demurrage/detention
and costs and expenses from the shipper or consignee or
any other Person, the, in the absence of evidence of
payment (for whatever reason) by such shipper or
consignee or other Person when due, the Merchant shall
remain responsible for and for the payment of such
Freight, duties, fees, demurrage/detention and costs
and expenses on receipt of evidence of demand within
the meaning of clause 16.3.

[14] Clause 21 ("Dangerous Goods" [such a hydrochloric acid])
provides in relevant part,

21.2 The Merchant warrants that such Goods are packed
in a manner adequate to withstand the risks of Carriage
having regard to their nature and in compliance with
all laws, regulations or requirements which may be
applicable to the Carriage.

21.3 The Merchant shall indemnify the Carrier against
all claims, liabilities, loss, damage, delay, costs,
fines and/or expenses arising in consequence of the
Carriage of such Goods, and/or arising from the breach
of any of the warranties in clause 21.2 including any
steps taken by the Carrier pursuant to clause 21.1
whether or not the Merchant was aware of the nature of
such Goods.

[15] Clause 22 ("Notification, Discharge and Delivery")
provides in relevant part,

22.2  The Merchant shall take delivery of the Goods
within the time provided for in the Carrier's
applicable Tariff.  If the Merchant fails to do so, the
Carrier may without notice unpack the Goods if packed
in containers and/or store the Goods ashore, afloat, in
the open or under cover at the sole risk of the
Merchant.  Such storage shall constitute due delivery
hereunder . . . .

22.3 If the Carrier is obliged to discharge the Goods
into the hands of any customs, port or other authority,
such discharge shall constitute due delivery of the
Goods to the Merchant under this bill of lading.

breach of them. Plaintiff's Amended Complaint (#20 AT ¶8) alleges that Samrat and ATNI shipped, refused to take delivery of, and abandoned the cargo after its arrival at the Port of Houston. Despite demand, they have refused to take delivery of the cargo or pay for cleanup costs, freight, demurrage, and other costs which they are obligated to pay under the terms of the governing contracts of carriage. It also alleges (*id*. at ¶18) that Samrat was a freight forwarder, logistics provider, NVOCC, manufacturer, receiver, and/or shipper of the subject cargo and responsible for proper packaging and marking of the cargo and for the hydrochloric acid after arrival in Houston. Therefore Samrat "individually and/or jointly failed to comply with multiple regulations found in Chapter 49 of the Code of Federal Regulations" (*id*. at ¶ 19). The pleading continued to state that Samrat's negligent failure to comply with these regulations triggered "liability without fault and liability based on negligence and/or negligence *per se* for the total amount of the damages incurred . . . as a result of said failure" (*id*. at ¶20). The complaint also names Samrat as the consignee of the cargo under the bills of lading and subject to the Maersk terms and conditions. (*id*. at ¶23) It alleges that Samrat breached the contract of carriage by tendering cargo that was inadequately packaged and failing to pay agreed freight and other expenses (*id*. at ¶24). The Amended complaint also seeks contribution from Samrat under CERCLA. (*id*. at ¶31) Thus Samrat

is responsible for losses alleged by Maersk and remains liable as the party responsible even though  Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT chose to settle with Maersk. Samrat's crossclaim against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT does not constitute a valid defense to Maersk's action.  Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT and Samrat are jointly and severally liable for Maersk's damages and therefore the crossclaim does not constitute a valid defense to Maersk's action.

### Samrat's Opposition (#81) to Motion to Vacate

Leaving aside the fact that Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. failed to timely respond to any pleading in the case, Samrat argues that such dilatory conduct is more egregious because Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. had actual knowledge of the filing of the crossclaim (which Samrat's counsel not only served on, but mailed a copy of to, their attorney), and counsel also confirmed his knowledge of the crossclaim in an email to Samrat's attorney on January 25, 2016.  #81, Exhibit A.  In addition Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. used the same attorney of record in numerous cases involving Samrat at concurrent times, including one in New Jersey pending since 2014, so according to Samrat they cannot argue they were not fully aware of this

case.[16]

Furthermore even after the entry of default (#70) on December 14, 2016, Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. did not file any response.  Their counsel finally filed a motion to appear pro hac vice (#73) on December 19, 2016, which was granted two days later.  Even then, Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. did not file anything until January 5, 2017, fifteen days after default judgment was entered, when they finally filed their motion to vacate default judgment (#79).

Samrat insists that Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. have not shown good cause why the default judgment should be vacated.  They cannot give any justification for their continued and willful failure to file a responsive pleading to Samrat's crossclaim.  If they had a meritorious defense, they clearly had an opportunity to present it much earlier.

Samrat contends that setting aside the default judgment would prejudice it because Samrat is not ultimately the party responsible and liable for the damages that Maersk seeks.  Moreover Samrat continues to owe more and more attorney's fees in defending against Maersk's claims, even though, as demonstrated by the Default

---

[16] Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT call this argument a "red herring."

Judgment, the Safewater Defendants are responsible for the alleged damages.

Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. have no meritorious defense to Samrat's crossclaim because they are involved in the underlying transactions with Maersk for which Maersk now seeks damages pursuant to a service contract between only Maersk and Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. Samrat was never a party to that contract. Samrat was the consignee (receiver) of the cargo in Houston; it did not load the cargo in Houston nor tender it to Maersk in India. Instead Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. provided for the containers to be loaded and had a contractual relationship with Maersk.

Furthermore Maersk has stated that it has settled with Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. Even though the settlement was for less than the sum Maersk sought in its complaint (#43), that does not excuse Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) Pvt, Ltd. from responding to Samrat's crossclaim nor that Samrat is responsible for making up the balance of Maersk's alleged losses.

## Safewater Lines (I) PVT, Ltd. and
## Safewater Lines (India) PVT's Reply (#83)

Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT point out that the default judgment was entered before expiration

of the time period they had to respond to the entry of default judgment requests. Their failure to answer the crossclaim arose out of the steadfast effort Maersk was making to get Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT out of the suit, and Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT did not want to thwart those efforts. Because Samrat had no legal basis to keep alive the lawsuit against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT after Maersk's suit against them was dismissed, thus directly answering any liability in this matter, it was legally just and correct for them not to respond to the crossclaim.

### Court's Decision Regarding Clarification

The Court grants Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT's motion for clarification. The Court has explained above how the conflicting events and delays caused confusion. As a result, the Court's Opinion and Order of January 31, 2017 (#84) does impact this case.

A brief chronological summary of what happened to each of the Defendants in the main action will help clarify the confusion.

First Maersk settled with ATNI and by agreement it was dismissed on February 20, 2015 (#35). No one has contested this dismissal.

Regarding Maersk's Rule 41(a)(1)(A)(i) Notice of Voluntary Dismissal with Prejudice (#54) of the Safewater Defendants, filed

on February 8, 2016, after they were served, but before they filed a responsive pleading to the first or second complaints, entitled Maersk to that dismissal as a matter of right even though Samrat opposed and still opposes it. Rule 41(a)(1)(A)(i) provides that "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." The Fifth Circuit has opined,

> Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable. So long as plaintiff has not been served with his adversary's answer or motion for summary judgment he need do no more than file a notice of dismissal with the Clerk. That document closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court.

*Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 291 (5th Cir. 2016), *quoting American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963).

` Thus after settling with Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, technically the Maersk's dismissal of its claims against them was effective on February 8, 2016, when Maersk filed a Notice of Dismissal with prejudice (#54) against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT under Rule 41(a)(1)(A)(I) in the main action. As indicated above, a dismissal with prejudice properly brought under Rule 41(a)(1)(A)(I) cannot be challenged by other defendants in a cause of action. The

Court affirmed Maersk's dismissal of Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT in its challenged Opinion and Order (#84) and reaffirms it here.

Default was entered (#17) against Samrat on February 6, 2014 after it failed to respond to Maersk's claims in Maersk's first complaint. Before a default judgment was requested, however, with leave of Court Maersk filed its First Amended Complaint (#43) on May 13, 2015, which thus superseded the Original Complaint and rendered the late default judgment based on that initial complaint moot. Samrat then filed an answer (#45) to the succeeding pleading on July 10, 2015. With leave of Court Maersk filed a Second Amended Complaint (#43) on May 13, 2015. Thus the only Defendant remaining in the main action is Samrat.

On December 8, 2016 Maersk filed a motion for summary judgment against Samrat on claims of contractual indemnity and breach of contract for reimbursement of cleanup and other related expenses, incurred by Maersk under its bill of lading's terms and conditions, and of tariff accrued from the time the containers were offloaded from the M/V MAERSK IDAHO in Houston, which the Court will address in a separate order.

Regarding Samrat's crossclaim for indemnification, filed on January 25, 2016 (#49), the only Defendants to the crossclaim, Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, never responded. As noted previously, over a period of time from

December 8, 2016 until January 31, 2017 Samrat moved for entry of default and entry of default judgment against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT on the crossclaim for indemnification. Given the Safewater Defendants' continuing failure to respond to any submissions challenging their conduct, the Court granted entry of default (#70) on December 14, 2016 and entry of default judgment (#75) on December 22, 2016.

**Crossclaim Defendants Safewater Lines (I) PVT, Ltd. and**

**Safewater Lines (India) PVT's Motion to Vacate (#79) Order**

Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, challenged that default judgment in their motion to vacate the Court's order (#75).

Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT represent that they chose not to "file an answer to Samrat's Cross-Claim because [they] assumed that doing so would constitute formal entry into a matter that [they] rightfully believed was resolved and should be dismissed. It was not anticipated that the Complaint would not be dismissed following settlement, and that Samrat's Cross-Claim would endure." #79 at 2-3.

Samrat charges that Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT did not even attempt to offer an excuse about their neglect in failing to answer the pleadings except that their attorney "assumed" that they could avoid fulfilling their obligations and transfer liability to their agent Samrat by

ignoring the Court's rules and scheduling order. Safewater Lines
(I) PVT, Ltd. and Safewater Lines (India) PVT's excuses of not
wanting to get involved in a formal way since they thought Maersk's
dismissal of them would moot the issue of the counterclaim, falter
because Safewater Lines (I) PVT, Ltd. and Safewater Lines (India)
PVT were already involved once they were served, and they provide
no persuasive justification for failing to communicate with
Samrat's counsel and/or to file an appropriate responsive pleading
to justify their delay in responding and avoid the culpability of
a default judgment.

## Samrat's Opposition (#81)

Despite the fact that Safewater Lines (I) PVT, Ltd. and
Safewater Lines (India) PVT did not respond to any pleading in this
act on time, its failure to do so with the motions for entry of
default and entry of default judgment are more egregious because
their attorneys had actual notice of the filings. They do not have
good cause for vacating the default judgment because their failure
to act was willful, would not prejudice the adversary Samrat, which
would only be required to do what it was originally required to do,
i.e., prosecute its crossclaim against Safewater Lines (I) PVT,
Ltd. and Safewater Lines (India) PVT, which if they had a
meritorious defense, they had a sufficient opportunity to present
it, and their long delay has not been nor cannot be justified.

Setting aside the default would greatly prejudice Samrat,

which is not the party ultimately responsible for Maersk's damages but which then would continue to incur attorney's fees defending against Maersk's claims for which Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT were responsible.

Furthermore Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT have no meritorious defense to the claims raised by Samrat in the crossclaim because they were involved in the underlying transactions with Maersk for which it now seeks damages pursuant to a service contract between Maersk and Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT. Samrat was the consignee (receiver) of the cargo in Houston. It did not load the cargo nor tender it to Maersk in India.[17] Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT provided the containers to be loaded and had a direct contractual relationship with Maersk.

Maersk settled with Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT and the remaining defendants for the sum of $60,000. #67, p. 26. Now Maersk seeks damages in the amount of $133,775.03 against Samrat only. *Id.* Given the contract between Maersk and Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, as pled in the Second Amended Complaint (#43, ¶12), and the claims by Samrat against Safewater Lines (I) PVT,

---

[17]  Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT argue that Samrat's counsel has no personal knowledge of the content of these statements and therefore the statements are not properly before the Court.

Ltd. and Safewater Lines (India) PVT in the Crossclaim (#49, ¶¶7,8) for which default judgment has been entered against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT (#75), Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT are not liable for the remaining damages that Maersk seeks against Samrat, as set forth in the default judgment (#75).

In sum there is no reason to vacate the default judgment. Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT blatantly disregarded the deadlines and Safewater Lines (I) PVT, Ltd. and rules of this Court in not responding to the crossclaim and should not be permitted to escape liability for its direct role in the service contract that governs Maersk's claims. Samrat has no contractual liability to Maersk and was not involved in any of the wrongdoing alleged by Maersk. Maersk's choice to settle the dispute with Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT for less than demanded in the Complaint (#43) does not excuse Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT from responding to Samrat's Crossclaim nor does it mean that Samrat is required to make up the balance of Maersk's alleged losses. If the Court finds that Maersk is entitled to damages, any amounts due from Samrat are actually the responsibility of Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, which have failed to show they are entitled to any relief in light of their direct knowledge of Samrat's Crossclaim and their

acknowledged failure to file a responsive pleading.  Thus they request the Court to deny Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT's motion to vacate judgment (#79).

### Safewater Defendants' Reply (#83)

Samrat ignores the fact that the default judgment was entered before the time for Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT to respond to the motion before its entry expired.  Their failure to respond arose not from a lack of notice of the suit, which they concede they had, but from the fact that Maersk was working to get Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT out of the suit and  Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT did not want to thwart those efforts.  Moreover, Samrat had no legal basis to keep alive the lawsuit against Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT once Maersk settled with them; thus it was legally fair and correct for Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT to refrain from answering the crossclaim in the hope that the Court would grant Maersk's effort to release  Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT from the suit.

Contrary to Samrat's claim that Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT presented no legitimate reason why they ignored the scheduling order and erroneously stating that Maersk "had absolutely no bearing on Samrat's claims against

Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT," the
settlement had everything to do with the Crossclaim.  The failure
to oppose the request for default was because the Court entered it
before the time  Safewater Lines (I) PVT, Ltd. and Safewater Lines
(India) PVT had to respond expired.   Indeed, it is Samrat, not
Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT, that
weeks to avoid acceptance of liability;  Safewater Lines (I) PVT,
Ltd. and Safewater Lines (India) PVT settled with Maersk a long
time ago.   Samrat cites no authority for its argument that
Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT are
liable to it even after they settled with Maersk.   Furthermore
Samrat's argument that setting aside the default would greatly
prejudice it because Samrat is not the party ultimately responsible
for the damage, or what is meant by "prejudice," because Samrat
would still have a claim against it by Maersk that it would have to
defend against and for which it would potentially be found liable.
The only real damage  to Samrat in vacating the default judgment
would be that Samrat would be forced to show it had a meritorious
defense and "this simply is not a sufficient reason for denying a
motion to vacate a default." *Nash v. Sigmore*, 90 F.R.D. 93, 94-95
(E.D. Pa. 1981).  If it turns out Samrat does not have to indemnify
Maersk for any of its proportional share of liability for Maersk's
claims, there is no injury to Samrat at all.   In the context of
determining whether to vacate a default, prejudice "concerns the

loss of available evidence, whether there is increased potential for collusion or fraud, and whether the plaintiff subsequently relied upon the default judgment." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir, 1982).  Safewater Lines (I) PVT, Ltd. and Safewater Lines (India) PVT insist that none of these factors is present, so Samrat will not be prejudiced.

## Court's Decision on Vacatur

The Court finds unpersuasive the Safewater Defendants' explanation for their failure to answer Samrat's indemnification crossclaim because they believed in good faith that if they did respond they would place themselves in a dispute that was resolved by their settlement with Maersk, which should have mooted the crossclaim.  The Rules of Civil Procedure are clear about unanswered  motions for entry of default and entry of default judgment:  they must be responded to, especially as here, where the defending party has never responded to any pleadings or documents throughout the litigation, or the Court in its discretion is likely to grant the harsh remedy of a default judgment.  The Safewater Defendants could have easily filed a motion to dismiss or for summary judgment of the crossclaim to test their theory that it would be moot, but they deliberately elected to "not get involved."

Moreover the history of the Safewater Defendants' failure to respond to any document aimed at them throughout this lawsuit from its commencement on June 13, 2013  up until they filed the motion

to set aside the default judgment undermines their claim that they would have responded to the motion for entry of default judgment. Specifically these include the Original Complaint (#1), Maersk's first request for entry of default against them (#13), their failure to appear for the initial conference before United States Magistrate Judge Frances Stacy on October 9, 2013 and for second conference on May 13, 2015 (#41), Maersk's Amended Complaint (#20) filed on March 18, 2014, Maersk's Second Amended Complaint (#43) filed on May 13, 2015, Samrat's crossclaim (#49) filed on January 25, 2016, Maersk's Notice of Dismissal (#54) and other Defendants' opposition to it (#50, 55), Samrat's motion for entry of default against the Safewater Defendants (#57), and Samrat's request for entry of default judgment against the Safewater Defendants (#69), filed on December 8, 2016.

Furthermore, even with their first appearance in this litigation with the filing of the motion to vacate order on motion for default judgment (#79) on January 5, 2017, they still fail to set out what their response would have been.

Indeed their intentional dilatory conduct constitutes anything but "good cause" to vacate the default judgment. Instead, as discussed, one factor that can be determinative is that a district court may refuse to set aside a default judgment if it finds the default was willful. *Carpanzano*, 556 Fed. Appx. at 293. *Carpanzano*, 556 Fed. Appx. at 293. Samrat and the Safewater

Defendants agree that the Safewater Defendants deliberately elected not to respond to any documents charging them with culpable conduct.

Thus the Court

ORDERS that the Safewater Defendants' motion to vacate order (#75) granting Samrat's motion for default judgment (#72) is DENIED.

SIGNED at Houston, Texas, this __23rd__ day of __August__, 2017.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE
